IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| ABEDE DASILVA, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:18-CV-00640 |
| | ) Judge Aleta A. Trauger |
| JEFFREY L. REINKING, | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT, JEFFREY L. REINKING'S, MOTION TO DISMISS**

Comes now Defendant, Jeffrey L. Reinking ("Mr. Reinking"), by and through counsel, pursuant to Fed. R. Civ. P. 12(b)(6), and hereby submits this Memorandum of Law in Support of his Motion to Dismiss the Plaintiff's Complaint against him. This Motion first seeks dismissal of the Plaintiff's cause of action for civil conspiracy (Count No. 2) based upon the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When this Court dismisses the civil conspiracy claim, it should also result in dismissal of the entire case against Mr. Reinking for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).[1]

**A. Facts**

Mr. Reinking is a citizen of, and is domiciled in, the State of Illinois, specifically Morton, IL in Tazewell County, Illinois. *See* Compl. ¶ 6. This lawsuit allegedly arises from

---

[1] Without waiving any argument regarding personal jurisdiction, Mr. Reinking acknowledges Tennessee has adopted what is known as conspiracy jurisdiction. As will be demonstrated below, Plaintiff's civil conspiracy cause of action is the **only** cause of action pleaded against Mr. Reinking which could even arguably confer personal jurisdiction over him to a Tennessee Court. Once the civil conspiracy cause of action is dismissed, there will be no basis for personal jurisdiction, and the entire suit should be dismissed against Mr. Reinking.

Abede DaSilva ("Plaintiff") witnessing the unfortunate death of Akilah DaSilva. *See generally* Compl. In his suit, Plaintiff alleges two (2) causes of action against Mr. Reinking: Negligent Infliction of Emotional Distress and Civil Conspiracy. Id.

>   **B.  The Complaint fails to state a claim upon which relief can be granted as to Civil Conspiracy, and this count should be dismissed against Mr. Reinking.**

Mr. Reinking first seeks to dismiss Plaintiff's claim of civil conspiracy under Fed. R. Civ. P. 12(b)(6), which provides that a defendant may move the court, before pleading, to dismiss a claim for "[f]ailure to state a claim upon which relief can be granted …." To survive a 12(b)(6) Motion, the Complaint must "allege 'facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level.'" Bickerstaff v. Lucarelli, 830 F.3d 388, 396 (6th Cir. 2016) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). There must be more pleaded than the "[s]heer possibility that a defendant has acted unlawfully." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A court is not required to "[a]ccept as true any 'conclusory legal allegations that do not include specific facts necessary to establish the cause of action.'" Id. (quoting New Albany Tractor, Inc. v. Louisville Tractor, Inc., 650 F.3d 1046, 1050 (6th Cir. 2011)). The purpose behind the Federal Rules of pleading is to give a defendant "[f]air notice of what the … the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. "To avoid dismissal …, a complaint must contain either direct or inferential allegations with respect to **all** the material elements of the claim." Hagen v. U-Haul Co. of Tenn., 613 F.Supp.2d 986, 994 (W.D. Tenn. Jan. 28, 2009) (emphasis added). The allegations must rise above mere speculation. Twombly, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Plaintiff alleges this Court has diversity jurisdiction under 28 U.S.C. § 1332; and, as such, Tennessee substantive law will apply. *See* Compl. ¶ 6; *see also* J-Line Pump Co., Inc. v. Chand, No. 13-2842, 2014 WL 12626361 at *1 (W.D. Tenn. Sept. 19, 2014) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Thus, in a diversity case where civil conspiracy is a cause of action, Tennessee's laws on civil conspiracy apply. *See* Hagen, 613 F.Supp.2d at 996 (where the Court applied Tennessee substantive law with respect to civil conspiracy in a diversity jurisdiction action).

The Plaintiff's Complaint fails to properly assert a cause of action for Civil Conspiracy against Mr. Reinking. Under Tennessee law, "[C]onspiracy claims must be pled with some degree of specificity." Kincaid v. South Trust Bank, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). "Conclusory allegations … unsupported by material facts will not be sufficient to state such a claim." Id. The Court is "**[n]ot** required to accept as true the inferences to be drawn from conclusory allegations." Id. at 40 (emphasis added).

When evaluating the sufficiency of a pleading asserting a cause of action for civil conspiracy, the Court must focus on the allegations of intent, because "intent is an essential element of a conspiracy claim …." Id. "[A]n actionable civil conspiracy is a combination of two or more persons who, each having intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." Clear Water Partners, LLC v. Benson, No. E2016–00442–COA–R3–CV, 2017 WL 376391 at *4 (Tenn. Ct. App. Jan.

26, 2017 (quoting Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002)). "Each conspirator must have the intent to accomplish this purpose, and each must know of the other's intent." Brown v. Birman Managed Care, Inc., 42 S.W.3d 62, 67 (Tenn. 2001). "Circumstantial evidence regarding the existence of a civil conspiracy must create more than a suspicion or conjecture that a conspiracy exists." First Am. Title Ins. Co. v. Cumberland Co. Bank, 633 F. Supp.2d 566, 588 (M.D. Tenn. Apr. 20, 2009).

"A conspiracy is actionable only if the underlying predicate tort was committed as part of the conspiracy." Clear Water, 2017 WL 376391 at *4 (citing Watson's Carpet & Floor Coverings, Inc. v. McCormick, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). "Since liability for civil conspiracy depends on the performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." Watson's, 247 S.W.3d at 180 (quoting Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983)).

When viewed in light of these requirements, the Plaintiff's Complaint fails to allege the necessary elements of a cause of action for civil conspiracy. In Watson's, the predicate tort alleged to have been committed was a business refusing to sell products to another. Watson's, 247 S.W.3d at 186 (essentially, Watson's alleged two businesses conspired for one of the businesses to not sell products to Watson's).[2] Nevertheless, this demonstrates what the predicate tort was.

Mr. Reinking has been sued for a civil conspiracy where the underlying predicate

---

[2] *See* Alfonso v. Bailey, No. E2015–02100–COA–R3–CV, 2016 WL 4218521 at *3 (Tenn. Ct. App. Aug. 9, 2016) (where the predicate tort was defendants conspired to intentionally permit a foreclosure sale, thereby damaging plaintiff); Haynes v. Bass, No. W2015–01192–COA–R3–CV, 2016 WL 335165 at *7 (Tenn. Ct. App. June 9, 2016) (where the predicate tort was defendants engaged in a plan to wrongfully deprive her of her home).

tort was the shooting of individuals at the Waffle House in Antioch, TN. Plaintiff alleges that Mr. Reinking participated in furtherance of a civil conspiracy. However, there is a key element missing from Plaintiff's Complaint. Simply stated, there is no allegation that Mr. Reinking had any intent to participate in what Tennessee law describes as the "predicate tort," which in this case is the shooting of individuals at the Waffle House in Antioch, TN in on April 22, 2018. There is not a single allegation contained in Plaintiff's Complaint that Mr. Reinking intended for Akilah DaSilva's death to occur. *See generally* Compl. There is not a single allegation contained in Plaintiff's Complaint that Mr. Reinking knew Travis Reinking intended for Akilah DaSilva's death to occur. Id. There is not even an allegation that Mr. Reinking knew the Travis Reinking intended to discharge these weapons in the direction of any person. Id. Reiterating the Court of Appeals, conspiracy is only actionable if the underlying tort (i.e., the Waffle House shooting) was committed as part of the conspiracy. Clear Water, 2017 WL 376391 at *4. Plaintiff uses the word "intent" with respect to Mr. Reinking's alleged conduct just three (3) times. *See* Compl. ¶¶ 34, 51, 71. At no point does Plaintiff allege that Mr. Reinking acted intentionally in furtherance of the Waffle House shooting. Simply put, the Waffle House shooting, the underlying tort, was not alleged to have been committed as part of any conspiracy the Plaintiff alleges existed between Mr. Reinking and Travis Reinking. Thus, Plaintiff's Complaint is lacking the requisite facts to support its conclusory statements with respect to civil conspiracy because Plaintiff has failed to establish that Mr. Reinking intended for Travis Reinking to commit murder and that Mr. Reinking knew of Travis Reinking's intent to commit murder.

Should Plaintiff make the argument that the unlawful purpose was to violate Illinois'

Firearm Owners' Identification ("FOID") law, the Complaint still fails to state a claim as to Civil Conspiracy because it fails to allege the requisite "unlawful purpose". Plaintiff alleges that Mr. Reinking:

> [C]onspired with Travis Reinking to violate 430 Ill. Comp. Stat. Ann. 65/0.01, *et seq.*; federal law prohibiting the unlawful transfer of firearms; and other applicable laws and regulations precluding Travis Reinking possessing any firearm. At the time that [Mr. Reinking] returned the [firearm] to Travis Reinking, both defendants had the intent and knowledge of the other's intent to accomplish by concert an unlawful purpose, or to accomplish a lawful purpose by unlawful means.

Compl. ¶¶ 70-71. The implication here is that Mr. Reinking conspired with Travis Reinking to achieve an unlawful purpose – namely violating Illinois' FOID law. However, Illinois' FOID law has no application in Tennessee. These are conclusory allegations not supported by any alleged fact in Plaintiff's Complaint. The Illinois legislature provided a declaration regarding its FOID law:

> It is hereby declared as a matter of legislative determination that in order to promote and protect the health, safety and welfare of the public, it is necessary and in the public interest to provide a system of identifying persons who are not qualified to acquire or possess firearms, firearm ammunition, stun guns, and tasers **within the State of Illinois** by the establishment of a system of Firearm Owner's Identification Cards, thereby establishing a practical and workable system by which law enforcement authorities will be afforded an opportunity to identify those persons who are prohibited by Section 24-3.1 of the Criminal Code of 2012, from acquiring or possessing firearms and firearm ammunition and who are prohibited by this Act from acquiring stun guns and tasers.

430 Ill. Comp. Stat. Ann. 65/1 (emphasis added). This system is for identifying people who are not qualified to possess firearms within the State of Illinois. Because one may not be able to legally possess a firearm in the State of Illinois does not necessarily mean one may not be able to legally possess a firearm in other jurisdictions. It is not unlawful, or violative of 430 Ill. Comp. Stat. Ann. 65/0.01, *et seq.*, to possess guns in the State of Tennessee. Plaintiff did not plead that Travis Reinking unlawfully possessed firearms in

ST Reinking DaSilva Mot to Dismiss Memo (District) 1808916    Case 3:18-cv-00640   Document 16   Filed 08/17/18   Page 6 of 14 PageID #: 69

6

Tennessee, or that he attempted, through some sort of conspiracy, to circumvent Tennessee law.

The Complaint alleges that Travis Reinking's FOID card was not formally revoked until August 2017. *See* Compl. ¶ 12. Up until that time, it was not unlawful, or violative of 430 Ill. Comp. Stat. Ann. 65/0.01, *et seq.*, for Travis Reinking to possess his firearms in Illinois. There is no allegation in Plaintiff's Complaint that pleads Travis Reinking possessed firearms in Illinois after his FOID card was revoked. Simply put: one cannot violate Illinois law regarding firearm ownership and possession while possessing the firearm at issue in Tennessee. Common sense dictates this. If this were the case, anyone who owned firearms in Tennessee without registering them through Illinois' FOID law would thereby be in violation thereof.

If Plaintiff attempts to argue the unlawful purpose of the alleged Civil Conspiracy was to violate federal laws and other applicable laws, Plaintiff's Complaint still fails to state a claim because Plaintiff does not plead with the specificity required. As the United State Supreme Court provided in Iqbal, simply reciting the elements of a cause of action is not enough to survive a Motion to Dismiss. *See* Iqbal, 556 U.S. at 678. Plaintiff alleges Mr. Reinking conspired to violate federal or other applicable laws without actually pleading facts supporting this conclusory statement.

Plaintiff's claim of civil conspiracy against Mr. Reinking must be dismissed for failure to state a claim upon which relief may be granted. His Complaint fails to allege facts that Mr. Reinking had the intent, or knew of Travis Reinking's intent, to commit the underlying predicate tort – the Waffle House shooting. Further, the Complaint fails to state a claim with respect to Illinois' FOID law, and violation thereof, as the unlawful purpose

because there have been no facts alleged that Mr. Reinking intended for Travis Reinking to possess firearms in Illinois. Possession of firearms in Tennessee is not a violation of Illinois' FOID law. Finally, the Complaint fails to state a claim with respect to federal laws and other applicable laws because Plaintiff simply makes conclusory statements that Mr. Reinking intended to violate federal laws and other applicable laws without alleging specific facts to support these conclusory statements.

> **C. As the Complaint fails to state a claim upon which relief can be granted as to Civil Conspiracy, this Court lacks personal jurisdiction over Mr. Reinking and the suit against him should be dismissed.**

Once the Court dismisses Plaintiff's cause of action for Civil Conspiracy against Mr. Reinking, the Court must dismiss the remaining cause of action against him because there is no longer even an arguable basis for personal jurisdiction over Mr. Reinking. The only basis for personal jurisdiction that even remotely exists is under Tennessee's civil conspiracy jurisdiction explained in First Cmty. Bank, N.A. v. First Tenn. Bank, N.A., 489 S.W.3d 369, 394 (Tenn. 2015).

A court must have personal jurisdiction to adjudicate a legal dispute. Am. Copper & Brass, Inc. v. Mueller Europe, Ltd., 452 F.Supp.2d 821, 825 (W.D. Tenn. Sept. 13, 2006). A defendant may move to dismiss a cause of action against him for lack of personal jurisdiction in the form of a Motion to Dismiss. See Fed. R. Civ. P. 12(b)(2). It is the burden of the Plaintiff is the one who must prove personal jurisdiction exists over a Defendant. Mueller, 452 F.Supp.2d at 825.

The seminal case regarding personal jurisdiction is Int'l. Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), where the U.S. Supreme Court provided a state court may exercise personal jurisdiction over a nonresident defendant if that defendant has "certain

minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" A defendant has minimum contacts in a forum state where he "should reasonably anticipate being haled into court there." World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980). "It is the quality of the contacts, not the quantity of the contacts, that is important." Read v. Lifeweaver, LLC, No. 2:08–CV–116, 2010 WL 1798704 at *3 (E.D. Tenn. May 5, 2010).

In a diversity jurisdiction case, a question of personal jurisdiction is both statutory and constitutional. Sullivan v. Boyd Gaming Corp., No. 05-2406 DV, 2005 WL 3434625 at *2 (W.D. Tenn. Dec. 13, 2005). "[A] federal court must apply the law of the state in which it sits when determining whether personal jurisdiction over a defendant exists." Id. "A federal court presiding over a case before it on diversity jurisdiction 'may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law.'" Id.

There is general and specific personal jurisdiction. Mueller, 452 F.Supp.2d at 827. "General jurisdiction arises when a defendant's contacts with the forum are of such a 'continuous and systematic nature' that the court may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contact with the forum." Id. (citing Third Nat'l Bank v. WEDGE Grp., Inc., 882 F.2d 1087, 1089 (6th Cir. 1989)). "Specific jurisdiction arises when the defendant has sufficient minimum contacts that arise from or are related to the cause of action." Id. To establish specific jurisdiction, the plaintiff must demonstrate:

> (1) the defendant purposefully availed himself of the privilege of acting in the forum or intentionally causes a consequence in the forum; (2) the cause of action arose from the defendant's activities in the forum; and (3) the acts of the defendant or consequences caused by the defendant have a

> substantial enough connection with the forum to make the exercise of jurisdiction reasonable.

Id. The most critical of the aforementioned criteria is purposeful availment. Id.

### 1. General Jurisdiction

As provided, for general jurisdiction to apply, there must be contacts that are "continuous and systematic nature". Here, Mr. Reinking's only contact with Tennessee is that Travis Reinking, his son, lives here. Plaintiff attempts to establish Mr. Reinking has more contacts with Tennessee other than Travis Reinking living here, *see* Compl. ¶¶ 53-54; however, these allegations are still not enough to sufficiently establish that Mr. Reinking could have reasonably anticipated being haled into Court here, nor are these allegations evidence that Mr. Reinking had continuous and systematic contacts with Tennessee. *See* Garrett v. R.H. Macy & Co., Inc., 360 F.Supp. 872, 877 (E.D. Tenn. July 24, 1972) ("[t]elephone calls by the non-resident to the forum state alone are not sufficient to give the forum court jurisdiction"). For instance, paragraph 54 of Plaintiff's Complaint alleges that after Travis Reinking's arrest, and after Akilah DaSilva's death, that Mr. Reinking had been in contact with Travis Reinking and made other contacts with persons within Tennessee. Plaintiff is attempting to use Mr. Reinking's actions after the tort had been committed to establish that Mr. Reinking has sufficient minimum contacts with Tennessee. There are no allegations in the Complaint that Mr. Reinking has ever travelled to, or stepped foot in, Tennessee. As such, Plaintiff has failed to establish that Tennessee has general jurisdiction over Mr. Reinking.

### 2. Specific Jurisdiction

As provided above, specific jurisdiction is present when there are sufficient minimum contacts related to the cause of action. The most important factor for specific

jurisdiction is purposeful availment. Mueller, 452 F.Supp.2d at 827. Without purposeful availment, there can be no specific jurisdiction.

Here, there are no allegations that Mr. Reinking purposefully availed himself to the forum state. There are no allegations that Mr. Reinking directed his activities towards citizens of Tennessee. Applying the law as cited from Mueller, Tennessee cannot exercise specific jurisdiction over Mr. Reinking because there are no allegations that he purposefully availed himself to Tennessee. As such, Plaintiff has failed to establish that Tennessee has specific jurisdiction over Mr. Reinking.

### 3. Tennessee's test for jurisdiction

As provided in Sullivan, Tennessee law applies for testing personal jurisdiction. Tennessee, in conjunction with the "minimum contacts" test from Int'l Shoe and Tenn. Code Ann. § 20-2-214, has developed a five (5) part test to analyze the contacts between Tennessee and a nonresident defendant. Humphreys v. Selvey, 154 S.W.3d 544, 551 (Tenn. Ct. App. 2004). There, it evaluates:

> (1) the quantity of the contacts between the defendant and the forum state; (2) the nature and quality of those contacts; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in adjudicating the dispute; and (5) the convenience of the forum state to the parties.

Id. The latter two (2) factors, interest of the forum state and convenience of the parties, are considered lesser to the three (3) former factors. Masada Investment Corp. v. Allen, 697 S.W.2d 332, 334 (Tenn. 1985).

Analyzing this matter under the three (3) former factors in Humphreys, Mr. Reinking had one (1) contact in Tennessee – his son – and it has not been alleged that Mr. Reinking purposefully availed himself to the State of Tennessee. The contact with

Tennessee was loose, at best, because Travis Reinking lived in Tennessee, not Mr. Reinking. This cause of action revolves around a shooting in Tennessee. Mr. Reinking's contacts – outside of Travis Reinking living in Tennessee – have a very loose relationship with the shooting that is the basis for this cause of action. As such, under Tennessee's test for jurisdiction provided in <u>Humphreys</u>, Tennessee does not have personal jurisdiction over Mr. Reinking.

### 4. Tennessee's Long-Arm Statute

Tennessee has a long-arm statute, Tenn. Code Ann. § 20-2-214, that allows Tennessee to exercise jurisdiction to the extent in which the Fourteenth Amendment of the United States Constitution permits. *See* <u>Read v. Lifeweaver, LLC</u>, No. 2:08–CV–116, 2010 WL 1798704 at *2 (E.D. Tenn. May 5, 2010). The Code provides:

> Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
>
> (1) The transaction of any business within the state;
>
> (2) Any tortious act or omission within this state;
>
> (3) The ownership or possession of any interest in property located within this state;
>
> (4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
>
> (6) Any basis not inconsistent with the constitution of this state or of the United States;
>
> (7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one

> party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

Tenn. Code Ann. § 20-2-214(a). Applying the aforementioned circumstances in which the Court can exercise personal jurisdiction over a defendant, it is clear Mr. Reinking does not fall under any of the aforementioned circumstances.

1. It has not been alleged that Mr. Reinking actually acted in Tennessee;
2. It has not been alleged that Mr. Reinking transacted any business in Tennessee;
3. It has not been alleged that Mr. Reinking committed any tortious act – aside from civil conspiracy, which, as provided above, should be dismissed under Fed. R. Civ. P. 12(b)(6) – in Tennessee,
5. It has not been alleged that Mr. Reinking owns property Tennessee;
5. It has not been alleged that Mr. Reinking entered into any contract in Tennessee; and
6. It has not been alleged that Mr. Reinking entered into any divorce in Tennessee.

Simply put: Mr. Reinking's contacts with Tennessee are so minimal that he could not have reasonably anticipated being haled into court here. As such, when the Court dismisses Plaintiff's claim of civil conspiracy against Mr. Reinking, the Court should dismiss Plaintiff's remaining causes of action against Mr. Reinking for lack of personal jurisdiction.

**WHEREFORE**, premises considered, Mr. Reinking respectfully moves this Court for an order:

1. Plaintiff's claim of civil conspiracy against him be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted; and

2. As a result, dismissing the remaining claim against Mr. Reinking based upon lack of personal jurisdiction pursuant Fed. R. Civ. P. 12(b)(2).

Respectfully submitted,

  s/ Cory R. Miller
**PARKS T. CHASTAIN**
Registration No. 13744
DIRECT: (615) 630-7717
(615) 256-8787, Ext. 114
pchastain@bkblaw.com
**CORY R. MILLER**
Registration No. 34770
DIRECT: (615) 630-7745
(615) 256-8787, Ext. 145
cmiller@bkblaw.com
Attorneys for Jeffrey L. Reinking

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228

## CERTIFICATE OF SERVICE

      I hereby certify that on this 17th day of August, 2018, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, JEFFREY L. REINKING'S, MOTION TO DISMISS was filed electronically. Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U. S. Mail. Parties may access this file through the court's electronic filing system.

Daniel A. Horwitz, Esquire
1803 Broadway, Suite 531
Nashville, TN 37203

Brian Manookian, Esquire
Cummings Manookian, PLC
45 Music Square West
Nashville, TN 37203

  s/ Parks T. Chastain
**PARKS T. CHASTAIN**
  s/ Cory R. Miller
**CORY R. MILLER**

ST Reinking DaSilva Mot to Dismiss Memo (District) 180916
14
Case 3:18-cv-00640   Document 16   Filed 08/17/18   Page 14 of 14 PageID #: 77