IN THE FIFTH CIRCUIT COURT
FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| SHAUNDELLE BROOKS, individually, and next-of-kin to the deceased, AKILAH DASILVA, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 18C1777 JURY DEMANDED |
| TRAVIS REINKING and JEFFREY L. REINKING, | ) ) ) | |
| Defendants. | ) | |

## DEFENDANT, JEFFREY L. REINKING'S, ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Comes now defendant, Jeffrey L. Reinking, by and through counsel, pursuant to Tenn. R. Civ. P. 33, and does hereby submit his answers to plaintiff's First Set of Interrogatories.

## GENERAL OBJECTION

Jeffrey Reinking objects to the definitions and instructions of plaintiff's Interrogatories to the extent these definitions and instructions do not conform to the requirements and obligations of Tenn. R. Civ. P. 33. Furthermore, in answering plaintiff's Interrogaotires, Mr. Reinking does not adopt the definitions used by plaintiff in any way other than to make his answers to the corresponding Interrogatories.

1. Please state the full name, address, and phone number or email address, if known, of each and every person responsible for providing information used in responding to any of the following interrogatories, requests for production of documents, and/or requests for admissions, and identify the particular discovery request that each such individual provided information for or used in responding to that particular request.

**ANSWER:**

Jeffrey Louis Reinking
(309) 231-8008
27380 Broadway Road
Morton, IL 61550
j.reinking@hotmail.com

**Jeffrey Reinking should be contacted through his attorneys of record.**

2. Please provide the name and contact information of each and every person or entity located—whether temporarily or otherwise—or domiciled in the State of Tennessee with whom you have corresponded since April 1, 2017.

**ANSWER:**

**Objection to the extent that this Interrogatory seeks information protected under the attorney-client privilege. Subject to, and without waiving objection:**

**Travis Reinking**
**JMS No. 878721**
**Control No. 577520**
**P. O. Box 196383**
**Nashville, TN 37219-6383**

**Casey at Craneworks in Nashville, TN**
**I do not know Casey's last name, nor do I know his address or e-mail address.**
**(205) 745-0101**

**John Augustine**
**I do not know Mr. Augustine's address, nor do I know e-mail address. However, I do know he lives in Kingston, TN.**
**(865) 717-8582**

**Danny with the Metropolitan Nashville Police Department.**
**I do not know Danny's address.**
**(615) 506-2863**

**Jonathan Wing, Travis Reinking's defense attorney in Travis Reinking's criminal case.**
**I do not know Mr. Wing's address.**
**(615) 880-3701**

I called a few pawn shops after the incident in April, but don't remember names or other information. There may be other persons or entities domiciled in Tennessee with whom I have corresponded since April 1, 2017. However, I cannot recall any other persons or entities.

3. Please identify the purpose of each and every correspondence you have had with any person residing in or located in the State of Tennessee, whether temporarily or otherwise, <u>other than your own legal counsel</u>, since April 1, 2017.

**ANSWER:**

**Travis Reinking. I cannot state specifically every time I have spoken with Travis Reinking. After he became domiciled in Tennessee, I did not communicate with him. The first time I communicated with Travis Reinking after he became domiciled in Tennessee was after his arrest in April 2018. The purpose for my communications with him after his arrest in April 2018 was simply as a father checking in on his son.**

**Casey at Craneworks. My communications with Casey were limited. He called me for a reference when Travis Reinking applied for a job at Craneworks. He then called me because Travis Reinking did not show up for work one day. The purposes for our communications were related to Travis Reinking working at Craneworks.**

**John Augustine. The purpose of my communication with John Augustine was to see if he had communicated with Travis Reinking after Travis Reinking became domiciled in Tennessee.**

**Danny with the Metropolitan Nashville Police Department. The purpose for my communication with Danny was related to locating Travis Reinking after April 22, 2018.**

**Jonathan Wing. There was not purpose for my communication with Mr. Wing. We simply met at Travis Reinking's apartment after April 22, 2018.**

4. Please indicate when you came to know or believe that Travis Reinking intended to become domiciled in the State of Tennessee.

**ANSWER:**

**I do not know or have any belief as to when Travis Reinking intended to become domiciled in the State of Tennessee.**

ST Reinking DaSilva Ans to Pltf Int 181113     3

Case 3:18-cv-00640   Document 27-2   Filed 12/17/18   Page 3 of 15 PageID #: 239

5. Please indicate when you came to know or believe that Travis Reinking had in fact become domiciled in the State of Tennessee.

**ANSWER:**

**April 18, 2018.**

6. Please indicate how many times you corresponded with Travis Reinking after he became domiciled in the State of Tennessee.

**ANSWER:**

**Objection. This Interrogatory is vague and ambiguous as the record does not reflect when Travis Reinking became domiciled in Tennessee. Additionally, the term "corresponded" is both vague and ambiguous. Subject to, and without waiving objections:**

**To the extent "corresponded" means "communicated", I only communicated with Travis Reinking approximately 8-10 times after April 22, 2018.**

7. Please state whether you attempted to assist Travis Reinking in securing employment in the State of Tennessee.

**ANSWER:**

**I did not attempt to assist Travis Reinking in securing employment in the State of Tennessee.**

8. Please identify the date of the most recent occasion when you entrusted Travis Reinking with a Bushmaster XM-15 rifle or returned a Bushmaster XM-15 rifle to Travis Reinking and the address of the location where the entrustment or return occurred.

**ANSWER:**

**Objection. This Interrogatory contains a false predicate in that nothing in the record supports that Jeffrey Reinking ever entrusted any firearm to Travis Reinking. Additionally, the term "returned" is both vague and ambiguous. Subject to, and without waiving objections:**

**To the extent the term "return" is meant to imply transfer of ownership, I did not return firearms to Travis Reinking, nor did I entrust firearms to Travis**

Reinking. Travis Reinking demanded and then took possession of his own firearms that had been in my gun safe in or around October/November 2017. I do not recall the specifics regarding the firearms Travis Reinking legally owned that were returned to him. This happened at my home at 27380 Broadway Road, Morton, IL 61550.

9. With respect to Interrogatory #8, please state each and every reason why you returned or entrusted Travis Reinking with a Bushmaster XM-15 rifle.

**ANSWER:**

Objection. This Interrogatory contains a false predicate in that nothing in the record supports that Mr. Reinking ever entrusted any firearm to Travis Reinking. Additionally, the term "returned" is both vague and ambiguous. Subject to, and without waiving objections:

To the extent the term "return" is meant to imply transfer of ownership, I did not return firearms to Travis Reinking, nor did I entrust firearms to Travis Reinking. Travis Reinking demanded and then took possession of his own firearms that had been in my gun safe.

10. Please indicate the date of each occasion that Travis Reinking has been involuntarily hospitalized.

**ANSWER:**

Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving objection:

This Interrogatory is omitted pursuant to the Court's Protective Order entered on November 8, 2018. As such, no answer from Jeffrey Reinking is required.

11. Please indicate the date of each occasion when you came to know that Travis Reinking had been involuntarily hospitalized.

**ANSWER:**

Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving objection:

This Interrogatory is omitted pursuant to the Court's Protective Order entered on November 8, 2018. As such, no answer from Jeffrey Reinking is

required.

12. Please indicate the date of each occasion when another person expressed concern to you about Travis Reinking's mental health.

**ANSWER:**

**Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Further, objection to the extent the interrogatory seeks the substance of conversations between the Defendant Jeffrey Reinking and his wife, based on marital privilege. Subject to, and without waiving said objections:**

**I do not recall the dates of any such conversations.**

14. (sic) Please indicate whether in or about June 2017, Travis Reinking threatened, frightened, and/or yelled profanity at an employee of J & J Cranes while in possession of a rifle.

**ANSWER:**

**Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving said objection:**

**I did not personally witness Travis Reinking threaten, frighten, and/or yell profanity at an employee of J&J Cranes while in possession of a rifle in or about June 2017. As such, I cannot personally state this happened, or did not happen, as described.**

15. (sic) Please indicate when you came to learn that Travis Reinking's Illinois Firearm Owners Identification card had been revoked.

**ANSWER:**

**Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving said objection:**

**I learned Travis Reinking's Firearm Owners Identification card had been revoked due to his lack of residency in the State of Illinois on August 24, 2017.**

16. (sic)    Please indicate how you came to learn that Travis Reinking's Illinois Firearm Owners Identification card had been revoked.

**ANSWER:**

**Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving said objection:**

**I learned Travis Reinking's Firearm Owners Identification card had been revoked due to his lack of residency in the State of Illinois when the Tazewell County Sheriff's Office presented to serve Travis Reinking notice of revocation.**

17. (sic)    Please indicate whether you took possession of Travis Reinking's firearms after his Illinois Firearm Owners Identification card was revoked and, if you did take possession of Travis Reinking's firearms, which firearms you took possession of thereafter.

**ANSWER:**

**Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, the term "took possession" is both vague and ambiguous. Subject to, and without waiving said objections:**

**To the extent "took possession" means legal ownership, I did not take possession of Travis Reinking's firearms. To the extent "took possession" means had Travis Reinking's firearms in my gun safe, after Travis Reinking's Firearm Owners Identification card was revoked for lack of residency in the State of Illinois, I did in fact keep his firearms in my gun safe. Later, Travis Reinking demanded to take his firearms that he legally owned from my gun safe. I do not know the specifics of the firearms Travis Reinking owned that were in my gun safe other than that it was a mixture of rifles and handguns.**

18. (sic)    Please indicate whether you were advised by law enforcement that you needed to keep firearms secure and away from Travis Reinking after his Illinois Firearm Owners Identification card was revoked.

**ANSWER:**

Objection. This Interrogatory contains a false predicate in that Mr. Reinking was advised by law enforcement that Jeffrey Reinking needed to keep firearms secure and away from Travis Reinking after his Illinois Firearm Owners Identification card was revoked, which has not been established. Subject to, and without waiving said objection:

I was not advised by law enforcement that I needed to keep firearms secure and away from Travis Reinking after his Illinois Firearm Owners Identification card was revoked due to residency, but it seemed to me they wanted me to do so at the time, so I did. I was given no information, instruction or guidance regarding keeping the guns in my gun safe until Travis began demanding return of the guns, whereupon I called the Tazewell County, Illinois Sheriff's office for advice.

19. (sic)   Please indicate whether you stated that you would comply with law enforcement's instructions that you needed to keep firearms secure and away from Travis Reinking after his Illinois Firearm Owners Identification card was revoked.

**ANSWER:**

Objection. This Interrogatory contains a false predicate in that Mr. Reinking was provided instructions from law enforcement regarding firearms, which has not been established. Subject to, and without waiving said objection:

Please refer to response number 18, above.

20. (sic)   Please indicate whether you complied with law enforcement's instructions that you needed to keep firearms secure and away from Travis Reinking after his Firearm Owners Identification card was revoked.

**ANSWER:**

Objection. This Interrogatory contains a false predicate that Mr. Reinking was provided instructions from law enforcement regarding firearms. Subject to, and without waiving said objection:

Please refer to response number 18, above.

21. (sic)    Please indicate the date when you came to learn that Travis Reinking had killed Akilah DaSilva.

**ANSWER:**

**Objection. This Interrogatory contains a false predicate in that it has yet to be established in any cause of action levied against Jeffrey Reinking that Travis Reinking did kill Akilah DaSilva. Subject to, and without waiving objection:**

**I learned that Travis Reinking had been accused of killing Akilah DaSilva on April 22, 2018. I have no personal knowledge of the accusations made against Travis Reinking.**

22. (sic)    Please indicate the date of each and every occasion that you communicated or attempted to communicate with Travis Reinking after you came to learn that he had killed Akilah DaSilva.

**ANSWER:**

**Objection. This Interrogatory contains a false predicate in that it has yet to be established in any cause of action levied against Jeffrey Reinking that Travis Reinking did kill Akilah DaSilva. Subject to, and without waiving objection:**

**I cannot state with specifics each time I communicated or attempted to communicate with Travis Reinking after April 22, 2018. However, I have communicated or attempted to communicate with Travis Reinking approximately 8-10 times since April 22, 2018.**

23. (sic)    Please indicate the substance of each and every communication that you have had with Travis Reinking after you came to learn that he had killed Akilah DaSilva.

**ANSWER:**

**This Interrogatory is omitted pursuant to the Court's Protective Order entered on November 8, 2018. As such, no answer from Jeffrey Reinking is required.**

24. (sic)    Please indicate whether on, about, or before May 1, 2018, you asked

or played any role in asking Joel E. Brown to release the following statement on your behalf:

> "The Reinking family is heartbroken and devastated at the loss of life and injury in Tennessee. The Reinkings pray for all of the victims and their families, for healing and peace. In time, and in the due course of understanding all of the facts of this tragedy, the Reinkings anticipate that greater clarity will be revealed about the events leading up to this incident."

**ANSWER:**

**Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, to the extent this Interrogatory seeks communications protected under the attorney-client privilege, Mr. Reinking object to production of such communications. Subject to, and without waiving said objections:**

**I approved the aforementioned statement being released on my behalf to multiple media outlets across the world.**

25. (sic)   Please explain the reason or reason(s) why the following statement was released on your behalf:

> "The Reinking family is heartbroken and devastated at the loss of life and injury in Tennessee. The Reinkings pray for all of the victims and their families, for healing and peace. In time, and in the due course of understanding all of the facts of this tragedy, the Reinkings anticipate that greater clarity will be revealed about the events leading up to this incident."

**ANSWER:**

**Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, to the extent this Interrogatory seeks communications protected under the attorney-client privilege, Mr. Reinking object to production of such communications. Subject to, and without waiving said objections:**

**This Interrogatory is omitted pursuant to the Court's Protective Order entered on November 8, 2018. As such, no answer from Mr. Reinking is required.**

26. (sic)   Please indicate whether on or about July 12th and/or July 13th, 2018, you asked or played any role in asking Joel E. Brown to release the following statement

on your behalf:

"A lawsuit has been filed in the United States District Court for the Middle District of Tennessee by Attorney Daniel Horwitz against Jeffrey L. Reinking. The complaint and media comments offered by Mr. Horwitz contain numerous allegations that continue the unfortunate trend of factual inaccuracy and rush to judgment surrounding Jeffrey Reinking's conduct. The complaint is filled with flawed legal argument, inappropriate hyperbole and shows what appears to be a greater desire for media coverage by a lawyer than finding the truth for a grieving family."

**ANSWER:**

**Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, to the extent this Interrogatory seeks communications protected under the attorney-client privilege, Mr. Reinking object to production of such communications. Subject to, and without waiving said objections:**

**I approved the aforementioned statement being released on my behalf to multiple media outlets across the world.**

27. (sic)    Please explain the reason or reason(s) why the following statement was released on your behalf:

"A lawsuit has been filed in the United States District Court for the Middle District of Tennessee by Attorney Daniel Horwitz against Jeffrey L. Reinking. The complaint and media comments offered by Mr. Horwitz contain numerous allegations that continue the unfortunate trend of factual inaccuracy and rush to judgment surrounding Jeffrey Reinking's conduct. The complaint is filled with flawed legal argument, inappropriate hyperbole and shows what appears to be a greater desire for media coverage by a lawyer than finding the truth for a grieving family."

**ANSWER:**

**Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, to the extent this Interrogatory seeks communications protected under the attorney-client privilege, Mr. Reinking object to production of such communications. Subject to, and without waiving said objections:**

**The intent of the aforementioned statement speaks for itself.**

28. (sic)    Please identify the date of each and every occasion when you have

transacted business in the State of Tennessee:

**ANSWER:**

Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, the term "transacted business" is both vague and ambiguous. Finally, this Interrogatory is overly broad and unduly burdensome in that it is neither limited in time nor limited in scope. Subject to, and without waiving said objection:

To the extent "transacted business" in the State of Tennessee means "spent money", I cannot recall every instance I have spent money in the State of Tennessee. To the extent "transacted business" in the State of Tennessee means been involved personally in business in the State of Tennessee, I have never been involved personally in business in the State of Tennessee. I also attended a weeklong crane operating class in the State of Tennessee in approximately 2010.

29. (sic)   Please identify the date of each and every occasion in which J & J Cranes has transacted business in the State of Tennessee:

**ANSWER:**

Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, the term "transacted business" is both vague and ambiguous. Finally, this Interrogatory is overly broad and unduly burdensome in that it is neither limited in time nor limited in scope. Subject to, and without waiving said objection:

To the extent "transacted business" in the State of Tennessee means J&J Cranes has been involved in business in the State of Tennessee, J&J Cranes has never been involved in business in the State of Tennessee.

30. (sic)   Please indicate whether you knew or believed that Travis Reinking intended to possess the Bushmaster XM-15 rifle that you returned to him outside of the State of Illinois, and if you did know or believe that Travis Reinking intended to possess the Bushmaster XM-15 rifle that you returned to him outside of the State of Illinois, where you expected that he intended to possess it:

**ANSWER:**

Objection. This Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving said objection:

To the extent the term "return" is meant to imply transfer of ownership, I did not return firearms to Travis Reinking. Travis Reinking demanded and then took possession of his own firearms that had been in my gun safe. I knew Travis Reinking was a non-resident of the State of Illinois as that was the basis for his Firearm Owners Identification card had been revoked. I knew Travis Reinking intended to possess firearms outside the State of Illinois. At the time Travis Reinking took his firearms that he owned from my gun safe, I did not know where he intended to possess firearms that he legally owned other than that he did not intend to possess them in the State of Illinois.

Respectfully submitted,

*/s/ signature/*

**PARKS T. CHASTAIN**
Registration No. 13744
DIRECT: (615) 630-7717
(615) 256-8787, Ext. 114
pchastain@bkblaw.com
**CORY R. MILLER**
Registration No. 34770
DIRECT: (615) 630-7745
(615) 256-8787, Ext. 145
cmiller@bkblaw.com

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228

**JOEL E. BROWN**
416 Main Street, Suite 1300
Peoria, IL 61602-1133
309-673-4357
jb@joelebrown.com

Attorneys for Defendant, Jeffrey L. Reinking

I hereby certify under oath that the foregoing Responses to Interrogatories are true and correct to the best of my knowledge, information, and belief.

_____
JEFFREY L. REINKING

STATE OF ILLINOIS       )

COUNTY OF Peoria        )

On this 15 day of November, 2018, before me personally appeared Jeffrey L. Reinking, known to be the person who executed the foregoing Responses to Interrogatories, and who after being duly sworn made oath that these Responses to Interrogatories are true to the best of her knowledge, information, and belief.

_____
NOTARY PUBLIC

My Commission Expires: _____

> Official Seal
> J E Brown
> Notary Public State of Illinois
> My Commission Expires 09/08/2021

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2018, a true and correct copy of the foregoing has been sent, via first-class mail, postage prepaid to:

Daniel A. Horwitz, Esquire
1803 Broadway, Suite 531
Nashville, TN 37203

Brian Manookian, Esquire
Cummings Manookian
45 Music Square West
Nashville, TN 37203

Joel E. Brown, Esquire
416 Main Street, Suite 1300
Peoria, IL 61602-1133

Mr. Travis Reinking
JMS No. 878721
Control No. 577520
P. O. Box 196383
Nashville, TN 37219-6383

_____
**PARKS T. CHASTAIN**
**CORY R. MILLER**