IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| ABEDE DASILVA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:18-CV-00640 ) Judge Eli Richardson |
| JEFFREY L. REINKING, | ) Magistrate Judge Alistair Newbern ) |
| Defendant. | ) |

## DEFENDANT, JEFFREY L. REINKING'S, ANSWERS TO PLAINITFF'S FIRST SET OF INTERROGATORIES

Comes now defendant, Jeffrey L. Reinking ("Mr. Reinking"), by and through counsel, pursuant to Fed. R. Civ. P. 26 and 33, and does hereby submit his answer to plaintiff's first set of interrogatories.

### GENERAL OBJECTION

Mr. Reinking objects to the definitions and instructions of plaintiff's Interrogatories to the extent these definitions and instructions do not conform to the requirements and obligations of Fed. R. Civ. P. 26 and 33. Furthermore, in answering plaintiff's Interrogatories, Mr. Reinking does not adopt the definitions used by plaintiff in any way other than to make his answers to the corresponding Interrogatories.

1. Please indicate whether any answer that you provided to any of the Interrogatories propounded upon you in Davidson County Circuit Court Case No. 18C1777—attached hereto as **Exhibit A**—was false.

**RESPONSE:**

To best of my knowledge, no answer I provided to any Interrogatory propounded to me in Davidson County Circuit Court Case No. 18C1777 was false. I answered each Interrogatory to the best of my ability, knowledge, and

based on the best of my recollection at the time the answers were made.

2. If any answer that you provided to any of the Interrogatories propounded upon you in Davidson County Circuit Court Case No. 18C1777—attached hereto as **Exhibit A**—was false, please indicate each specific question to which you provided a false response and explain why you answered the question or questions falsely.

### RESPONSE:

**To best of my knowledge, no answer I provided to any Interrogatory propounded to me in Davidson County Circuit Court Case No. 18C1777 was false. I answered each Interrogatory to the best of my ability, knowledge, and based on the best of my recollection at the time the answers were made.**

3. Please indicate whether any answer that you provided to any of the Requests for Production propounded upon you in Davidson County Circuit Court Case No. 18C1777—attached hereto as **Exhibit B**—was false.

### RESPONSE:

**To best of my knowledge, no answer I provided to any of the Requests for Production propounded to me in Davidson County Circuit Court Case No. 18C1777 was false. I answered each Request for Production to the best of my ability, knowledge, and based on the best of my recollection at the time the answers were made.**

4. If any answer that you provided to any of the Requests for Production propounded upon you in Davidson County Circuit Court Case No. 18C1777—attached hereto as **Exhibit B**—was false, please indicate each specific question to which you provided a false response and explain why you answered the question or questions falsely.

### RESPONSE:

**To best of my knowledge, no answer I provided to any of the Requests for Production propounded to me in Davidson County Circuit Court Case No. 18C1777 was false. I answered each Request for Production to the best of**

my ability, knowledge, and based on the best of my recollection at the time the answers were made.

5. Please indicate whether any answer that you provided to any of the Requests for Admission propounded upon you in Davidson County Circuit Court Case No. 18C1777—attached hereto as **Exhibits C1 and C2**—was false.

**RESPONSE:**

**To best of my knowledge, no answer I provided to any of the Requests for Admission propounded to me in Davidson County Circuit Court Case No. 18C1777 was false. I answered each Request for Admission to the best of my ability, knowledge, and based on the best of my recollection at the time the answers were made.**

6. If any answer that you provided to any of the Requests for Admission propounded upon you in Davidson County Circuit Court Case No. 18C1777—attached hereto as **Exhibits C1 and C2**—was false, please indicate each specific question to which you provided a false response and explain why you answered the question or questions falsely.

**RESPONSE:**

**To best of my knowledge, no answer I provided to any of the Requests for Admission propounded to me in Davidson County Circuit Court Case No. 18C1777 was false. I answered each Request for Admission to the best of my ability, knowledge, and based on the best of my recollection at the time the answers were made.**

7. Please indicate whether you knew or had reasonable cause to believe that Travis Reinking did not reside in Illinois in or around October/November 2017.

**RESPONSE:**

**In October/November 2017, I had reason to believe that Travis Reinking either did not reside in Illinois or intended to leave the Illinois without any intent to return.**

8. Please indicate whether in or around October/November 2017, you

transferred, transported, delivered, or gave Travis Reinking any firearm or firearms that had been in your gun safe, and if you did, indicate which firearm or firearms you transferred, transported, delivered, or gave him.

**RESPONSE:**

**In or around October/November 2017, Travis Reinking contacted me asking that firearms he legally owned that were in my gun safe be returned to him. After Travis Reinking requested his firearms be returned to him, I contacted a Special Agent with the Federal Bureau of Investigation ("FBI") and a Sergeant with the Tazewell County Sheriff's Office seeking advice regarding the return of firearms Travis Reinking legally owned to him. Upon the advice of law enforcement officials who indicated that since Travis Reinking's Illinois Firearm Owner Identification ("FOID") card was revoked solely because of lack of residency in Illinois, Travis Reinking's firearms could be returned to him if it was his intention to only possess them passing through Illinois while exiting Illinois. Based on this advice, I placed Travis Reinking's firearms that were in my gun safe on a table for his retrieval, he arrived at my home, retrieved his firearms from a table, loaded his firearms into his vehicle, and departed from my home. I do not know specifically which firearms that were returned to Travis Reinking.**

9. Please indicate whether in or around October/November 2017, Travis Reinking was able to take possession of firearms that had been in your gun safe because you opened the gun safe for him.

**RESPONSE:**

**In or around October/November 2017, Travis Reinking contacted me asking that firearms he legally owned that were in my gun safe be returned to him. After Travis Reinking requested his firearms be returned to him, I contacted a Special Agent with the FBI and a Sergeant with the Tazewell County Sheriff's Office seeking advice regarding the return of firearms Travis Reinking legally owned to him. Upon the advice of law enforcement officials who indicated that since Travis Reinking's Illinois FOID card was revoked solely because of lack of residency in Illinois, Travis Reinking's firearms could be returned to him if it was his intention to only possess them passing through Illinois while exiting Illinois. Based on this advice, I placed Travis Reinking's firearms that were in my gun safe on a table for his retrieval, he arrived at my home, retrieved his firearms from a table, loaded his firearms into his vehicle, and departed from my home.**

10. Please indicate whether one of the firearms that had been in your gun safe in or around October/November 2017 was the rifle that Travis Reinking used to shoot and kill Akilah DaSilva in Davidson County, Tennessee.

**RESPONSE:**

**I was not present at the scene where the incident giving rise to this litigation took place. As such, I have no personal knowledge as to whether or not one of the firearms that had been in my gun safe in or around October/November 2017 was the rifle used to shoot Akilah DaSilva. Because I have no personal knowledge, I cannot answer in the affirmative or the negative.**

11. Please indicate what specific advice, if any, you received that "Travis Reinking, as a non-resident of Illinois, was not prohibited from possessing a firearm in the State of Illinois" at the time he took possession of firearms that had been in your gun safe in or around October/November 2017.

**RESPONSE:**

**After Travis Reinking requested that firearms – firearms that he legally owned that were in my gun safe – be returned to him, I contacted the FBI seeking advice. There, I was given the advice to sell the firearms Travis Reinking legally owned in my gun safe. I did not do this because: 1) I am not a licensed dealer authorized to sell firearms legally owned by another; and 2) selling firearms legally owned by someone else would be theft/conversion and could have brought criminal and/or civil penalties upon myself.**

**After speaking with the FBI, I spoke with the Tazewell County Sheriff's Office. There, I was advised that because Travis Reinking's FOID card had been revoked solely because of lack of residency in Illinois, Travis Reinking's firearms could be returned to him if it was his intention to only possess them passing through Illinois while exiting Illinois. Based on this advice and the fact that Travis Reinking legally owned his firearms, I returned Travis Reinking his firearms.**

12. Please indicate the name and address of each person or persons, if any, who provided you the advice referenced in Interrogatory #11 and the specific advice given to you by each person.

**RESPONSE:**

**Special Agent Matthew Hoffman, Federal Bureau of Investigation, 211 Fulton, Suite 710, Peoria, IL 61602. He advised me to sell the firearms Travis Reinking legally owned in my gun safe. I did not do this because: 1) I am not a licensed dealer authorized to sell firearms legally owned by another; and 2) selling firearms legally owned by someone else would be theft/conversion and could have brought criminal and/or civil penalties upon myself.**

**Sergeant Ryan Tarby, Tazewell County Sheriff's Office; 101 So. Capitol Street, Pekin, IL 61554. He advised me that because Travis Reinking's FOID card had been revoked solely because of lack of residency in Illinois, Travis Reinking's firearms could be returned to him if it was his intention to only possess them passing through Illinois while exiting Illinois. Based on this advice and the fact that Travis Reinking legally owned his firearms, I returned Travis Reinking his firearms.**

13. Please indicate whether in or around October/November 2017, Travis Reinking was able to open your gun safe without your assistance.

**RESPONSE:**

**No. To my knowledge, Travis Reinking did not know where my gun safe was located.**

14. Please indicate whether you have personal knowledge that any assertion, claim, or contention in any of the police reports attached hereto as **Exhibit D** is false or inaccurate, and if so, indicate each assertion, claim, or contention that you claim or believe is false or inaccurate.

**RESPONSE:**

**Page three (3) of the August 24, 2017 report contains inaccuracies with respect to alleged specific instructions provided by the Tazewell County Sheriff's Office. It states that I was given instruction to keep Travis Reinking's firearms locked in my gun safe and away from Travis Reinking. I was asked by the Tazewell County Sheriff's Office if I had a gun safe, and I answered in the affirmative. I was then asked if I could place Travis Reinking's firearms in my gun safe, and I answered that I could. Tazewell County Sheriff's Office served Travis Reinking with the Illinois FOID revocation letter at my shop at J&J Cranes. I was asked by the Tazewell County Sheriff's Office to transport Travis Reinking's firearms back to my**

gun safe at my home. I expressed concern with transporting firearms unsecured, and out of each's respective case, but Tazewell County Sheriff's Office assured me that this was fine. I was never given any express instruction from the Tazewell County Sheriff's Office that I was to keep Travis Reinking's firearms that he legally owned away from him.

With respect to the May 27, 2016 report, I was not present for any conversations that took place between Travis Reinking and Tazewell County ERS as I stood back out of the way at the scene. I have no personal knowledge of the conversations that took place between Travis Reinking and Tazewell County ERS. As such, I cannot state whether this report is true, false, accurate, or inaccurate.

With respect to the June 16, 2017 reports, I was not present for these purported incidents as, as the report states, I was out of state at the time. I have no personal knowledge of these purported incidents. I had, with Travis Reinking's permission, placed his firearms in my gun safe previously. However, upon Travis Reinking's request, I returned these firearms to him when he relocated from Illinois to Colorado for approximately nine (9) months. As such, regarding the other statements made in this report, I cannot state whether these statements are true, false, accurate, or inaccurate.

With respect to the August 11, 2017 report, I was not present when this interaction purportedly took place. I have no personal knowledge of this interaction. As such, I cannot state whether this report is true, false, accurate, or inaccurate.

15. Please indicate the date or approximate date of each occasion when you have visited Tennessee.

**RESPONSE:**

Objection. This Interrogatory is not limited in scope in that it asks for recollection of each and every in which I have visited Tennessee in my entire life. Subject to, and without waiving objection, since April 22, 2018, I have visited Tennessee numerous times to visit Travis Reinking since he is currently incarcerated in Tennessee. I cannot state with any sort of specificity as to the dates or frequency of my visits. Prior to April 22, 2018, aside from passing through Tennessee while driving from Illinois to other various locations, I believe, to the best of my knowledge and recollection, I visited Tennessee approximately four (4) times:

2010 – I attended a Crane School in or around Kingston, TN. I attended the class for approximately one (1) week. I believe it was held in a crane

company's lot called "Barnhart", but I cannot be 100% certain. Mr. John Augustine was the person teaching the class.

Spring/Summer 2017 – After considering expanding J&J Cranes into Tennessee, I visited Tennessee to scout potential business for J&J Cranes in Nashville, Chattanooga, and Knoxville. I stayed approximately 2-3 days.

Spring/Summer 2017 – I again visited Nashville against to scout potential business for J&J Cranes. I stayed approximately 2-3 days.

January/February 2018 – After not hearing from Travis Reinking for several months, I visited the Knoxville, TN area for 3-4 days searching for Travis Reinking upon belief that Travis Reinking had relocated to the Knoxville, TN area. I was unsuccessful in locating Travis Reinking.

16. Please indicate whether you purchased anything on any occasion when you visited Tennessee, and if you did, please indicate each and every thing that you purchased.

**RESPONSE:**

**Objection. This Interrogatory is not limited in scope in that it asks for recollection of every thing I have purchased when I have visited Tennessee in my entire life. Subject to, and without waiving objection, I have visited Tennessee numerous times visiting Travis Reinking, who is incarcerated in Tennessee, since April 22, 2018. Prior to April 22, 2018, I visited Tennessee sparingly. I cannot recall each and every thing I have purchased in Tennessee in my entire life. To the best of my knowledge, the only purchases I have made on my visits to Tennessee have been related to purchasing food, lodging, and fuel.**

17. Please indicate whether you are or have ever been a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms.

**RESPONSE:**

**No.**

18. Please indicate the name and location of the "weeklong crane operating class" that you attended in the State of Tennessee in approximately 2010 and the address of the location where you stayed during that week.

**RESPONSE:**

I attended a Crane School in or around Kingston, TN. I attended the class for approximately one (1) week. I believe it was held in a crane company's lot called "Barnhart", but I cannot be 100% certain. Mr. John Augustine of Sullivan Training was the person teaching the class. I cannot recall the specific address where I stayed, but I stayed in a hotel around the area.

19. Please indicate each and every action you took to enable Travis Reinking to take possession of any firearm that had been in your gun safe in or about October/November 2017. For purposes of this Interrogatory, "action" includes, without limitation: Entering a combination or using a key to open your gun safe; physically opening your gun safe; providing Travis Reinking the means to open the gun safe himself; physically handing any gun in your gun safe to Travis Reinking; and any other act of any kind that enabled Travis Reinking to take possession of any firearm that had been located in your gun safe.

**RESPONSE:**

In or around October/November 2017, Travis Reinking contacted me requesting to retrieve his firearms that he legally owned that were in my safe. Before acting in any way, I contacted the FBI and the Tazewell County Sheriff's Office asking for advice. The FBI advised me to sell the firearms Travis Reinking legally owned in my gun safe. I did not do this because: 1) I am not a licensed dealer authorized to sell firearms legally owned by another; and 2) selling firearms legally owned by someone else would be theft/conversion and could have brought criminal and/or civil penalties upon myself. The Tazewell County Sheriff's Office advised me that because Travis Reinking's FOID card had been revoked solely because of lack of residency in Illinois, Travis Reinking's firearms could be returned to him if it was his intention to only possess them passing through Illinois while exiting Illinois. Based on this advice and the fact that Travis Reinking legally owned his firearms, I returned Travis Reinking his firearms.

Based on the advice of law enforcement, before Travis Reinking arrived at my home to retrieve firearms he legally owned, I retrieved his firearms that were in my safe and laid them on a table outside the home for his retrieval. Travis Reinking then took his firearms, placed them in his truck, and departed my home. I did not physically hand him any firearm or help him

**load any firearm in his truck.**

20. Please indicate whether you physically handed Travis Reinking any firearm that had been in your gun safe in or about October/November 2017, and if you did, which firearm or firearms you handed him.

### RESPONSE:

**I did not physically hand Travis Reinking any firearm that had been in my gun safe in or about October/November 2017.**

21. Please indicate whether you have ever communicated with any person in Tennessee related to the subject of purchasing or selling an automobile, and if you did, the name of the person or persons with whom you communicated.

### RESPONSE:

**After April 22, 2018, while in Tennessee visiting Travis Reinking who is currently incarcerated in Tennessee, the transmission in Volkswagen Passat was damaged. I communicated with a used car lot about a Jeep for sale in or around Murfreesboro, TN as a potential replacement to my Volkswagen Passat. I do not recall specifically the person with whom I spoke. I did not purchase it, and I did not visit Tennessee to look at it.**

**Prior to April 22, 2018, I communicated with Insurance Auto Auctions. I do not recall specifically the person with whom I spoke. I called about a crane for the sole use of harvesting it for parts. I did not purchase it, and I did not visit Tennessee to look at it. My phone call was only to inquire about the extent of the damage.**

22. Please indicate whether you provided a positive reference for Travis Reinking after he applied for a job at Craneworks.

### RESPONSE:

**Objection as it relates to the word "positive", which is a subjective term open for interpretation, as it is vague and ambiguous. Subject to, and without waiving objection, Upon the request of Casey at Craneworks, I told him Travis Reinking was a good, safe crane operator.**

23. Please indicate why you "called a few pawnshops" based in Tennessee in

or about April 2018.

**RESPONSE:**

**After April 22, 2018, I found a receipt in Travis Reinking's apartment in or around Nashville, TN indicating Travis Reinking had purchased some silver that was to be picked up. I called this particular shop to ask about the silver to be picked up, and I was informed that it had already been picked up.**

24. Please indicate whether you have ever sold or pawned any item or purchased any item from any pawnshop located in Tennessee.

**RESPONSE:**

**I have not sold or pawned any item or purchased any item from any pawnshop located in Tennessee.**

25. Please indicate the date of each and every correspondence that you have had with John Augustine since October 2017.

**RESPONSE:**

**To the extent "correspondence" means written communications, whether electronic or not, I have had none. My communications with Mr. John Augustine since October 2017 have all been oral over the telephone.**

I hereby certify under oath that the foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information, and belief.

_____
JEFFREY L. REINKING

STATE OF ILLINOIS      )

COUNTY OF  Tazewell    )

On this 19 day of December, 2018, before me personally appeared Jeffrey L. Reinking, known to be the person who executed the foregoing Responses to Interrogatories, and who after being duly sworn made oath that these Responses to Interrogatories are true to the best of her knowledge, information, and belief.

_____
NOTARY PUBLIC

My Commission Expires: 4/28/2019

"OFFICIAL SEAL"
BRITTANY FAIR
Notary Public, State of Illinois
My Commission Expires 04/28/2019

Respectfully submitted,

    s/Parks T. Chastain
**PARKS T. CHASTAIN**
Registration No. 13744
DIRECT: (615) 630-7717
(615) 256-8787, Ext. 114
pchastain@bkblaw.com
**CORY R. MILLER**
Registration No. 34770
DIRECT: (615) 630-7745
(615) 256-8787, Ext. 145
cmiller@bkblaw.com

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228

**JOEL E. BROWN**
416 Main Street, Suite 1300
Peoria, IL 61602-1133
309-673-4357
jb@joelebrown.com

Attorneys for Defendant, Jeffrey L. Reinking

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2018, a true and correct copy of the foregoing Answers to Plaintiff's First Set of Interrogatories was sent electronically.

Daniel A. Horwitz, Esquire
1803 Broadway, Suite 531
Nashville, TN 37203

Joel E. Brown, Esquire
416 Main Street, Suite 1300
Peoria, IL 61602-1133

s/ Parks T. Chastain
**PARKS T. CHASTAIN**
s/ Cory R. Miller
**CORY R. MILLER**
s/ Joel E. Brown
**JOEL E. BROWN**