IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| ABEDE DASILVA, | § |
| *Plaintiff*, | § |
| v. | § Case No. 3:18-cv-00640 |
| JEFFREY L. REINKING, | § |
| *Defendant*. | § |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT'S DUTY AND BREACH OF DUTY**

Pursuant to Fed. R. Civ. P. 56(c)(1)(A) and Local Rule 56.01(b), the Plaintiff respectfully submits this Statement of Undisputed Material Facts, together with references to supporting record evidence, in support of his accompanying *Motion for Partial Summary Judgment*:

**Undisputed Material Facts**

1. On May 26, 2016, the Tazewell County Sheriff's Office responded to an incident at a CVS parking lot in Morton, Illinois, in which "Travis J. Reinking was delusional and believed the famous entertainer, Taylor Swift, was harassing him via stalking and hacking his phone. Travis believed everyone including his own family and the police are involved."[1]

**Response:**

---

[1] Doc. 36-1, p. 11.

2. Law enforcement responded to the incident because "Travis' mother, Judith Reinking, father, Jeffrey Reinking, and grandmother, Marilyn Hopper, were worried about Travis so they called ERS."[2]

**Response:**

3. Jeffrey Reinking was present at the CVS parking lot when law enforcement arrived, and he informed the responding officers that "Travis has been having these delusions since August 2014" and had made comments about killing himself earlier in the day.[3]

**Response:**

4. Police responded to the incident by taking Travis Reinking to a hospital against his will.[4]

**Response:**

---

[2] Doc. 36-1, p. 11.

[3] Doc. 36-1, p. 11.

[4] Doc. 36-1, pp. 11-12.

5. After Travis Reinking was taken to a hospital against his will, the Defendant drove Travis Reinking's vehicle to his house so that it did not sit in the CVS parking lot.[5]

**Response:**

6. On June 16, 2017, Travis Reinking arrived at the Defendant's business, J&J Cranes, with a rifle while wearing a pink dress or a woman's house coat.[6]

**Response:**

7. While holding the rifle, Travis Reinking began yelling at employees "is this what you fucking want" and then threw the rifle in the trunk of his car and sped away.[7]

**Response:**

---

[5] Doc. 36-1, p. 12.

[6] Doc. 36-1, p. 16; Doc. 36-1, p. 22.

[7] Doc. 36-1, p. 16.

8. Travis Reinking then drove to the Tremont swimming pool and took off his dress, jumped in the pool, began yelling at people, tried to get the lifeguards to fight him, and "showed his genitals saying he was a man."[8]

**Response:**

9. After this incident, a Tazewell County Sheriff's Officer "contacted Jeff Reinking" on his cell phone and "advised him of what was going on."[9]

**Response:**

10. In response, the Defendant made the following statements to the Tazewell County Sheriff's Office:

> "Jeff stated that awhile back he took 3 rifles and a hand gun away and locked them up when Travis was having problems. Jeff wanted to move out of state so he gave them back to him . . . . Jeff stated he called his daughter [ ], who was going to stop by the shop and talk to Travis."[10]

**Response:**

---

[8] Doc. 36-1, p. 16; Doc. 36-1, p. 22.

[9] Doc. 36-1, p. 16.

[10] Doc. 36-1, p. 16.

11. Jeffrey Reinking's daughter was subsequently advised of what had happened, and "she stated she was fine by herself and would talk to Travis and see if she could store the weapons for safe keeping."[11]

**Response:**

12. Thereafter, a Tazewell County Sheriff's officer "called back Jeff Reinking and advised him of what happened and when he gets back home he might want to lock the guns back up until Travis gets mental help which he stated he would."[12]

**Response:**

13. On August 16, 2017, the Tazewell County Sheriff's office issued a revocation letter revoking Travis Reinking's Firearm Owner's Identification (FOID) card.[13]

**Response:**

---

[11] Doc. 36-1, p. 16.

[12] Doc. 36-1, p. 16.

[13] Doc. 27-4, p. 163.

14. On August 24, 2017, the Tazewell County Sheriff's Office served Travis Reinking with the Illinois FOID revocation letter at the Defendant's shop at J&J Cranes.[14]

**Response:**

15. The Tazewell County Sheriff's office FOID revocation letter indicated that Travis Reinking was obligated to surrender his firearms and that failure to comply with the Illinois FOID Act "constitutes a Class A misdemeanor."[15]

**Response:**

16. On August 24, 2017, Travis Reinking executed a Firearm Disposition Record and provided it to Illinois State Police.[16]

**Response:**

---

[14] Doc. 31-1, p. 6, Interrogatory Answer #14 ("Tazewell County Sheriff's Office served Travis Reinking with the Illinois FOID revocation letter at my shop at J&J Cranes.").

[15] Doc. 27-4, p. 163.

[16] Doc. 36-1, p. 24.

17. Travis Reinking's Firearm Disposition Record indicated that four firearms, including a Bushmaster XM-15 rifle, were transferred to the Defendant, Jeffrey Reinking, because Travis Reinking was required to surrender all firearms in his possession or control.[17]

**Response:**

18. Rather than allowing law enforcement to take possession of Travis Reinking's surrendered weapons, Jeffrey Reinking had Travis Reinking's firearms released and legally transferred to him.[18]

**Response:**

19. Sergeant Ryan Tarby was the officer who received Travis Reinking's Firearm Disposition Record on August 24, 2017.[19]

**Response:**

---

[17] Doc. 36-1, p. 24.

[18] Doc. 36-1, p. 24; Doc. 36-1, p. 4.

[19] Doc. 36-1, p. 24.

20. On August 24, 2017, the same day that the Tazewell County Sheriff's Office served Travis Reinking with the Illinois FOID revocation letter at the Defendant's shop at J&J Cranes, Sergeant Tarby filed a police report that states, in full, as follows:

> On 08/24/17, at approximately 1641 hours, Deputy Linton and I, Sergeant Tarby, made contact with Travis Reinking and his father, Jeffrey Reinking, at JJ Cranes, 13535 Baer Rd, Tremont.
>
> I gave Travis a copy of the Illinois State Police FOID Revocation paper. Travis provided me with his Illinois State FOID card. Travis assisted us in retrieving all his weapons and ammunition.
>
> The following weapons were logged:
> One Kimber 9mm Handgun; One Bushmaster AR-15; One CZ-USA .22 cal rifle; One Remington 710, and misc ammo. The weapons and ammo were recorded on the ISP Disposition Record. All weapons and ammo were released to Jeffrey Reinking which holds a valid FOID card. **Jeffrey was advised that he needed to keep the weapons secure and away from Travis. Jeffrey stated he would comply.**
>
> The FOID card is being sent back to ISP. No further action is being taken.
>
> End of Report.[20]

**Response:**

21. By August 2017, the rifle that was later used to shoot at the Plaintiff and kill the Plaintiff's brother, Akilah DaSilva, in Tennessee was locked in the Defendant's gun safe in a shop on his property in Illinois.[21]

**Response:**

---

[20] Doc. 36-1, p. 4 (emphasis added).

[21] Doc. 27-1, p. 88, line 23 – p. 89, line 2; Doc. 27-1, p. 86, lines 1-5. *See also* Doc. 27-1, p. 90, lines 18-23.

22. The Defendant was the only person with the code to unlock his gun safe.[22]

**Response:**




23. Travis Reinking was not able to open the Defendant's gun safe without the Defendant's assistance.[23]

**Response:**




24. On November 12, 2017, Travis Reinking sent the Defendant a text message stating: "Dad, I got a place out of town now, so I'm going to need to get my firearms back from you somehow."[24]

**Response:**

---

[22] Doc. 27-1, p. 86, lines 6-8:

> 6   Q.  You were the only person with the
> 7       code to unlock that gun safe, correct?
> 8   A.  Correct.

[23] Doc. 31-1, p. 6, Interrogatory Answer #13 ("No. To my knowledge, Travis Reinking did not know where my gun safe was located.").

[24] Doc. 27-5, p. 4.

25. Less than two hours later, the Defendant responded to Travis Reinking's text message by sending a return text message that stated: "Ok."[25]

**Response:**

26. When Travis Reinking text messaged the Defendant and told him that he had secured an out-of-state apartment, which the Defendant later confirmed was in Tennessee, that was when he opened his gun safe and gave Travis Reinking access to the rifle that he used to kill Akilah DaSilva.[26]

**Response:**

27. After Travis Reinking requested the return of his surrendered firearms, the Defendant "contacted the FBI seeking advice."[27]

**Response:**

---

[25] Doc. 27-5, p. 4.

[26] Doc. 27-1, p. 90, lines 18-24.

[27] Doc. 31-1, p. 5, Interrogatory Answer #11.

28. The FBI—specifically, Special Agent Matthew Hoffman—advised the Defendant to sell the firearms at issue.[28]

**Response:**

29. Drawing his own independent legal conclusions as to the legality of selling firearms and the criminal and civil liability that he claims to have believed he would face if he complied with Special Agent Matthew Hoffman's advice, the Defendant did not do what Special Agent Matthew Hoffman had advised him to do.[29]

**Response:**

30. After speaking with Special Agent Hoffman, the Defendant sought alternative advice from "the Tazewell County Sheriff's Office"[30]–specifically, Sergeant Ryan Tarby.[31]

**Response:**

---

[28] Doc. 31-1, p. 5, Interrogatory Answer #11; *id.* at p. 6, Interrogatory Answer #12.

[29] Doc. 31-1, p. 5, Interrogatory Answer #11; *id.* at p. 6, Interrogatory Answer #12.

[30] Doc. 31-1, p. 5, Interrogatory Answer #11.

[31] Doc. 27-1, p. 110, line 22 – p. 111, line 5.

31. During his December 4, 2018 deposition, Jeffrey Reinking was asked specifically: "[W]hat was the instruction, advice, or content of the communication that you received from [Sergeant Ryan Tarby]?"[32]

**Response:**

32. Jeffrey Reinking's response to this question was to "assert the privilege under the Fifth Amendment, the privilege against self-incrimination."[33]

**Response:**

33. After disregarding the FBI's advice to sell the firearms at issue and speaking with Sergeant Tarby from the Tazewell County Sheriff's Office, the Defendant unlocked his gun safe and removed the firearms that law enforcement had revoked from Travis Reinking in August 2017,[34] which included the Bushmaster XM-15 rifle.[35]

**Response:**

---

[32] Doc. 27-1, p. 112, lines 21-25.

[33] Doc. 27-1, p. 112, line 25 – p. 113, line 3.

[34] Doc. 27-1, p. 89, lines 9-12; Doc. 31-1, p. 4, Interrogatory Answer #9.

[35] Doc. 36-1, p. 24; Doc. 36-1, p. 4.

34. Travis Reinking could never have gotten the rifle but for the Defendant unlocking his gun safe.[36]

**Response:**

35. The Defendant went and unlocked his gun safe and pulled the rifle out at Travis Reinking's request.[37]

**Response:**

36. Travis Reinking then showed up at the Defendant's house, and the Defendant either handed him the rifle or it was on a table and Travis Reinking took it.[38]

**Response:**

---

[36] Doc. 27-1, p. 96, line 15 – p. 97, line 3.

[37] Doc. 27-1, p. 97, lines 4-6.

[38] Doc. 27-1, p. 97, lines 7-10.

37. At the time the Defendant handed the Bushmaster XM-15 rifle to Travis Reinking or placed it on a table for Travis Reinking to take, the Defendant both knew and had reasonable cause to believe that Travis Reinking was a non-resident of the State of Illinois.[39]

**Response:**

38. At the time the Defendant handed the Bushmaster XM-15 rifle to Travis Reinking or placed it on a table for Travis Reinking to take, Jeffrey Reinking was not a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms.[40]

**Response:**

---

[39] Doc. 27-2, p. 13, Interrogatory Answer #30 ("I knew Travis Reinking was a non-resident of the State of Illinois as that was the basis for his Firearm Owners Identification card had been [sic] revoked."); Doc. 27-3, p. 3, Interrogatory Answer #7 ("Jeffrey Reinking was aware that Travis Reinking was not a resident of the State of Illinois at the time he demanded return and thereafter took possession of the firearms owned by Travis Reinking."); Doc. 31-1, p. 3, Interrogatory Answer #7 ("In October/November 2017, I had reason to believe that Travis Reinking either did not reside in Illinois or intended to leave the Illinois [sic] without any intent to return.").

[40] Doc. 31-1, p. 8, Interrogatory Answer #17.

39. At the time the Defendant handed the Bushmaster XM-15 rifle to Travis Reinking or placed it on a table for Travis Reinking to take, no law enforcement official advised Jeffrey Reinking, a resident of Illinois, that he could transfer firearms to Travis Reinking, a non-resident of Illinois, without violating 18 U.S.C. § 922(a)(5).[41]

**Response:**

40. The Bushmaster XM-15 rifle was transferred to Travis Reinking at the Defendant's property,[42] which is located within the State of Illinois.[43]

**Response:**

---

[41] Doc. 31-1, pp. 5-6, Interrogatory Answer #12.

[42] Doc. 27-1, p. 94, lines 6-8.

[43] Doc. 27-1, p. 5, lines 13-16.

41. The Bushmaster XM-15 rifle was ultimately used to shoot at the Plaintiff and to shoot and kill the Plaintiff's brother in front of him.[44]

**Response:**

---

[44] Doc. 27-1, p. 90, lines 18-24; **Exhibit #1** (Davidson County Circuit Court's Nov. 8, 2018 Order Granting Plaintiff's Motion for Partial Summary Judgment as to Travis Reinking's Liability for Battery, Case No. 18C1777); **Exhibit #2** (Affidavit of Abede DaSilva).

-16-

Respectfully submitted,

By: /s/Daniel A. Horwitz_____
Daniel A. Horwitz, BPR #032176
1803 Broadway, Suite #531
Nashville, TN 37203
daniel.a.horwitz@gmail.com
(615) 739-2888

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of January, 2019, a copy of the foregoing was sent via CM/ECF to the following parties:

Parks T. Chastain
Cory R. Miller
BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC
545 Mainstream Drive, Suite 101
Nashville, TN 37228
pchastain@bkblaw.com
cmiller@bkblaw.com

Joel E. Brown
416 Main Street, Suite 1300
Peoria, IL 61602
jb@joelebrown.com

*Attorneys for Defendant Jeffrey L. Reinking*

By: /s Daniel A. Horwitz_____