IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| ABEDE DASILVA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 3:18-cv-00640 |
| | § | |
| JEFFREY L. REINKING, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT'S DUTY AND BREACH OF DUTY**

## I. Introduction

This is a case about the Defendant's unlawful provision of a semi-automatic rifle to his mentally unstable son, Travis Reinking, who then used that rifle to attempt to kill the Plaintiff and to murder the Plaintiff's brother in front of him during a mass shooting. Here, the record evidence demonstrates beyond any genuine dispute that the Defendant returned the firearm that produced the Plaintiff's injuries to Travis Reinking:

(1) After gratuitously undertaking a duty to keep firearms away from Travis Reinking;

(2) Despite a special relationship with Travis Reinking and actual knowledge that his son was delusional, dangerous, and had severe mental health problems; and

(3) In knowing violation of 18 U.S.C. § 922(a)(5) and within the State of Illinois after Travis Reinking's right to possess firearms in Illinois had been revoked.

Partial summary judgment as to the Defendant's duties of care and his breach of those duties of care should issue accordingly.

## II. Legal Standards

Fed. R. Civ. P. 56(b) provides that "a party may file a motion for summary judgment **at any time** until 30 days after the close of all discovery."). *Id.* (emphasis added). *See also Georgia Pac., LLC v. Heavy Machines, Inc.*, No. CIV. A. 07-944-JJB, 2010 WL 2026670, at *2, n. 6 (M.D. La. May 20, 2010) (noting that "under the new rule 56, 'a party may move for summary judgment at any time, even as early as the commencement of the action.'") (quoting Fed. R. Civ. P. 56 Advisory Committee Notes).

Fed. R. Civ. P. 56(a) additionally provides that: "A party may move for summary judgment, identifying each claim or defense—**or the part of each claim** or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). Motions for partial summary judgment reduce unnecessary litigation costs by permitting early resolution of claims upon which there is no dispute of material fact and for which judgment is proper as a matter of law. *See, e.g., In re G-I Holdings Inc.*, No. 01-30135 (RG), 2007 WL 1412294, at *2 (D.N.J. May 14, 2007) ("The ability of a court to enter partial summary judgment 'serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact.'") (quoting Fed. R. Civ. P. 56, Advisory Committee Notes). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In the instant case, the Plaintiff seeks summary judgment as to the first two elements of negligence: The Defendant's duty of care and the Defendant's breach of his duty of care. *See Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996) ("the plaintiff must present material evidence as to each of the five elements of general negligence—duty, breach of duty, injury or loss, causation in fact, and proximate, or legal, cause"). For the

reasons that follow, there is no genuine dispute as to either element. Summary judgment as to both Defendant's duty and his breach of duty should issue accordingly.

### III. Undisputed Material Facts

The essential facts that govern this motion are undisputed:

In May 2016 and June 2017, Defendant Jeffrey Reinking was actually aware of at least two incidents in which his son, Travis Reinking, had exhibited severe mental health problems that indicated that he was a danger to himself and others.[1] During a May 2016 incident at a CVS parking lot, the Defendant informed law enforcement that his son had made comments about killing himself had been suffering from paranoid delusions "since August 2014."[2] The following year, during a June 2017 incident that began with Travis Reinking threatening the Defendant's employees with a rifle at the Defendant's business and ended with Travis Reinking exposing his genitals at a public swimming people, law enforcement "called [] Jeff Reinking and advised him of what happened," and also told the Defendant that "when he gets back home he might want to lock the guns back up until Travis gets mental help which he stated he would."[3]

In August of 2017, Travis Reinking's right to possess firearms in Illinois was formally revoked.[4] Travis Reinking's Firearm Disposition Record indicated that four of his firearms—including a Bushmaster XM-15 rifle—were transferred to the Defendant, Jeffrey Reinking, because Travis Reinking's right to possess firearms had been revoked

---

[1] Doc. 36-1, p. 11; Doc. 36-1, p. 16.

[2] Doc. 36-1, p. 11.

[3] Doc. 36-1, p. 16.

[4] Doc. 27-4, p. 163; Doc. 31-1, p. 6, Interrogatory Answer #14 ("Tazewell County Sheriff's Office served Travis Reinking with the Illinois FOID revocation letter at my shop at J&J Cranes.").

and he was obligated to surrender all firearms in his possession or control.[5] A police report memorializing the August 2017 revocation indicated as follows:

> On 08/24/17, at approximately 1641 hours, Deputy Linton and I, Sergeant Tarby, made contact with Travis Reinking and his father, Jeffrey Reinking, at JJ Cranes, 13535 Baer Rd, Tremont.
>
> I gave Travis a copy of the Illinois State Police FOID Revocation paper. Travis provided me with his Illinois State FOID card. Travis assisted us in retrieving all his weapons and ammunition.
>
> The following weapons were logged:
> One Kimber 9mm Handgun; One Bushmaster AR-15; One CZ-USA .22 cal rifle; One Remington 710, and misc ammo. The weapons and ammo were recorded on the ISP Disposition Record. All weapons and ammo were released to Jeffrey Reinking which holds a valid FOID card. **Jeffrey was advised that he needed to keep the weapons secure and away from Travis. Jeffrey stated he would comply.**
>
> The FOID card is being sent back to ISP. No further action is being taken.
>
> End of Report.[6]

Following the revocation, in August 2017, the rifle that was later used to shoot at the Plaintiff and to murder the Plaintiff's brother was locked in the Defendant's gun safe in a shop on his property in Illinois.[7] The Defendant was the only person with the code to unlock his gun safe,[8] and Travis Reinking was not able to open the Defendant's gun safe without the Defendant's assistance.[9]

---

[5] Doc. 36-1, p. 24.

[6] Doc. 36-1, p. 4 (emphasis added).

[7] Doc. 27-1, p. 88, line 23 – p. 89, line 2; Doc. 27-1, p. 86, lines 1-5. *See also* Doc. 27-1, p. 90, lines 18-23.

[8] Doc. 27-1, p. 86, lines 6-8.

[9] Doc. 31-1, p. 6, Interrogatory Answer #13 ("No. To my knowledge, Travis Reinking did not know where my gun safe was located.").

On November 12, 2017, Travis Reinking sent the Defendant a text message stating: "Dad, I got a place out of town now, so I'm going to need to get my firearms back from you somehow."[10] Less than two hours later, the Defendant responded to Travis Reinking's text message by sending a return text message that stated: "Ok."[11] During his deposition, the Defendant admitted that when Travis Reinking text messaged the Defendant and told him that he had secured an out-of-state apartment—which the Defendant later confirmed was in Tennessee—that was when he opened his gun safe and gave Travis Reinking access to the rifle that he used to kill Akilah DaSilva.[12]

Before returning the revoked firearms to Travis Reinking, the Defendant "contacted the FBI seeking advice."[13] The FBI—specifically, Special Agent Matthew Hoffman—advised the Defendant to sell the firearms, rather than return them to Travis Reinking.[14] Drawing his own independent legal conclusions as to the legality of selling firearms and the criminal and civil liability that he claims to have believed he would face if he complied with Special Agent Matthew Hoffman's advice, however, the Defendant disregarded Special Agent Matthew Hoffman's advice and did not do what the FBI had specifically advised him to do.[15]

---

[10] Doc. 27-5, p. 4.

[11] Doc. 27-5, p. 4.

[12] Doc. 27-1, p. 90, lines 18-24.

[13] Doc. 31-1, p. 5, Interrogatory Answer #11.

[14] Doc. 31-1, p. 5, Interrogatory Answer #11; *id.* at p. 6, Interrogatory Answer #12.

[15] Doc. 31-1, p. 5, Interrogatory Answer #11; *id.* at p. 6, Interrogatory Answer #12.

After speaking with Special Agent Hoffman, the Defendant sought alternative advice from "the Tazewell County Sheriff's Office"[16]–specifically, Sergeant Ryan Tarby.[17] During his December 4, 2018 deposition, Jeffrey Reinking was asked specifically: "[W]hat was the instruction, advice, or content of the communication that you received from [Sergeant Ryan Tarby]?"[18] Jeffrey Reinking's response to this question was to refuse to testify against himself, and instead, he "assert[ed] the privilege under the Fifth Amendment, the privilege against self-incrimination."[19]

After disregarding the FBI's advice to sell the firearms at issue and speaking with Sergeant Tarby from the Tazewell County Sheriff's Office, the Defendant unlocked his gun safe and removed the firearms that law enforcement had revoked from Travis Reinking in August 2017,[20] which included the Bushmaster XM-15 rifle.[21] Travis Reinking could never have gotten this rifle but for the Defendant unlocking his gun safe.[22] Travis Reinking then showed up at the Defendant's house, and the Defendant handed him the rifle or else had placed it on a table and Travis Reinking took it.[23]

---

[16] Doc. 31-1, p. 5, Interrogatory Answer #11.

[17] Doc. 27-1, p. 110, line 22 – p. 111, line 5.

[18] Doc. 27-1, p. 112, lines 21-25.

[19] Doc. 27-1, p. 112, line 25 – p. 113, line 3. Based on this invocation, the Plaintiff is entitled to an adverse inference regarding the advice that Defendant received. *See, e.g., Nat'l Acceptance Co. of Am. v. Bathalter*, 951 F.2d 349 (6th Cir. 1991) ("After *Baxter* there is no longer any doubt that at trial a civil defendant's silence may be used against him, even if that silence is an exercise of his constitutional privilege against self-incrimination. Thus, if this case were to go to trial, NAC[A] would be entitled to the benefit of an adverse inference against Bathalter if he declined to answer a question and invoked his Fifth Amendment privilege.") (quoting *Nat'l Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924, 929 (7th Cir. 1983)).

[20] Doc. 27-1, p. 89, lines 9-12; Doc. 31-1, p. 4, Interrogatory Answer #9.

[21] Doc. 36-1, p. 24; Doc. 36-1, p. 4.

[22] Doc. 27-1, p. 96, line 15 – p. 97, line 3.

[23] Doc. 27-1, p. 97, lines 7-10.

At the time the Defendant handed the Bushmaster XM-15 rifle to Travis Reinking or placed it on a table for Travis Reinking to take, the Defendant both knew and had reasonable cause to believe that Travis Reinking was a non-resident of the State of Illinois.[24] Jeffrey Reinking also was not a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms at the time of the transfer.[25] Further, no law enforcement official advised Jeffrey Reinking, a resident of Illinois, that he could transfer firearms to Travis Reinking—someone he knew was a non-resident of Illinois—without violating 18 U.S.C. § 922(a)(5),[26] which forbade such a transfer.

The Bushmaster XM-15 rifle was transferred to Travis Reinking at the Defendant's property,[27] which is located within the State of Illinois.[28] That rifle was ultimately used to shoot at the Plaintiff and to murder the Plaintiff's brother in front of him.[29]

## IV. Argument

In November 2017, the Defendant had multiple legal duties not to return firearms to Travis Reinking. By returning the Bushmaster XM-15 rifle at issue to Travis Reinking in November 2017 anyway, the Defendant breached those duties of care.

---

[24] Doc. 27-2, p. 13, Interrogatory Answer #30 ("I knew Travis Reinking was a non-resident of the State of Illinois as that was the basis for his Firearm Owners Identification card had been [sic] revoked."); Doc. 27-3, p. 3, Interrogatory Answer #7 ("Jeffrey Reinking was aware that Travis Reinking was not a resident of the State of Illinois at the time he demanded return and thereafter took possession of the firearms owned by Travis Reinking."); Doc. 31-1, p. 3, Interrogatory Answer #7 ("In October/November 2017, I had reason to believe that Travis Reinking either did not reside in Illinois or intended to leave the Illinois [sic] without any intent to return.").

[25] Doc. 31-1, p. 8, Interrogatory Answer #17.

[26] Doc. 31-1, pp. 5-6, Interrogatory Answer #12.

[27] Doc. 27-1, p. 94, lines 6-8.

[28] Doc. 27-1, p. 5, lines 13-16.

[29] *See* Doc. 38-2; Doc. 38-1.

A. Defendant's Duties of Care

In November 2017, Jeffrey Reinking had at least three independent legal duties not to return firearms to Travis Reinking:

*First*, Jeffrey Reinking gratuitously undertook a duty to keep firearms away from Travis Reinking. *See* Doc. 36-1, p. 4 ("Jeffrey was advised that he needed to keep the weapons secure and away from Travis. **Jeffrey stated he would comply.**") (emphasis added). Under Tennessee law, "[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully." *Marr v. Montgomery Elevator Co.*, 922 S.W.2d 526, 529 (Tenn. Ct. App. 1995). *See also Biscan v. Brown*, 160 S.W.3d 462, 482–83 (Tenn. 2005) (same) (quoting *Stewart v. State*, 33 S.W.3d 785, 793 (Tenn. 2000)).

*Second*, the Defendant personally secured Travis Reinking's firearms and had them legally transferred to the Defendant's care rather than allowing them to be confiscated by law enforcement.[30] The Defendant thus entered into a special legal relationship with Travis Reinking with respect to his firearms, and the Defendant had actual knowledge that his son was delusional, dangerous, and had severe mental health problems at the time he did so.[31] *See Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997) (holding that those who have a special relationship with a third party have a legal duty to protect others from the dangerous conduct of third persons). *See also Bradshaw v. Daniel*, 854 S.W.2d 865, 871 (Tenn. 1993). *Cf. Rains v. Bend of the River*, 124 S.W.3d

---

[30] Doc. 36-1, pp. 4, 24.

[31] Doc. 36-1, p. 11 (in which the Defendant informed law enforcement that Travis Reinking was suicidal and had been suffering from delusions "since August 2014."); Doc. 36-1, p. 16 (noting that after the June 2017 incident, law enforcement "called back Jeff Reinking and advised him of what happened and when he gets back home he might want to lock the guns back up until Travis gets mental help which he stated he would.")

580, 595 (Tenn. Ct. App. 2003) (holding that "suspicious conduct or demeanor" or other "conduct providing the seller with reason to believe that the purchaser might be suicidal" can give rise to a legal duty not to sell a firearm to a third party).

*Third*, both 18 U.S.C. § 922(a)(5) and the Illinois FOID Act, including 430 Ill. Comp. Stat. Ann. 65/3(a), prohibited the Defendant from transferring the firearms at issue to an out-of-state resident or to Travis Reinking within the State of Illinois following the August 2017 revocation. Nonetheless, the Defendant transferred four firearms—including the Bushmaster XM-15 rifle—to Travis Reinking both in knowing violation of 18 U.S.C. § 922(a)(5)[32] and within the State of Illinois[33] even after Travis Reinking's right to possess firearms in Illinois had been formally revoked.[34]

Tennessee law reflects that 18 U.S.C. § 922 imposes a legal duty upon those who transfer firearms to a third party, the violation of which constitutes negligence *per se*. *See, e.g., Rains v. Bend of the River*, 124 S.W.3d 580, 592 (Tenn. Ct. App. 2003) (noting that a "this court has implied that the sale of handgun ammunition to a person under twenty-one years of age is negligence per se under Tennessee law. *Fly v. Cannon*, 836 S.W.2d 570, 572 (Tenn. Ct. App. 1992). Accordingly, for the purpose of reviewing the trial court's denial of Bend of the River's motion for summary judgment, we will presume that the sale of handgun ammunition to an eighteen year old purchaser in violation of 18

---

[32] Doc. 27-2, p. 13, Interrogatory Answer #30 ("I knew Travis Reinking was a non-resident of the State of Illinois as that was the basis for his Firearm Owners Identification card had been [sic] revoked."); Doc. 27-3, p. 3, Interrogatory Answer #7 ("Jeffrey Reinking was aware that Travis Reinking was not a resident of the State of Illinois at the time he demanded return and thereafter took possession of the firearms owned by Travis Reinking."); Doc. 31-1, p. 3, Interrogatory Answer #7 ("In October/November 2017, I had reason to believe that Travis Reinking either did not reside in Illinois or intended to leave the Illinois [sic] without any intent to return.").

[33] Doc. 27-1, p. 97, lines 4-10; Doc. 27-1, p. 94, lines 6-8; Doc. 27-1, p. 5, lines 13-16.

[34] Doc. 27-4, p. 163; Doc. 31-1, p. 6, Interrogatory Answer #14 ("Tazewell County Sheriff's Office served Travis Reinking with the Illinois FOID revocation letter at my shop at J&J Cranes."); Doc. 36-1, p. 24.

U.S.C. § 922(b)(1) is negligence per se.").

The Illinois FOID Act additionally imposes a separate restriction on the transfer of firearms to Travis Reinking within the State of Illinois, the violation of which Travis Reinking's FOID revocation letter expressly indicated was "a Class A misdemeanor." *See* Doc. 27-4, p. 163. *See also* 430 Ill. Comp. Stat. Ann. 65/3(a) ("[N]o person may knowingly transfer, or cause to be transferred, any firearm, firearm ammunition, stun gun, or taser to any person within [the State of Illinois] unless the transferee with whom he deals displays either: (1) a currently valid Firearm Owner's Identification Card which has previously been issued in his or her name by the Department of State Police under the provisions of this Act; or (2) a currently valid license to carry a concealed firearm which has previously been issued in his or her name by the Department of State Police under the Firearm Concealed Carry Act.").

Here, at the time the transfer took place at the Defendant's home in Illinois, the Defendant knew both that Travis Reinking was an out-of-state resident[35] and that Travis Reinking's Illinois FOID card had been revoked,[36] but he transferred the firearms at issue to Travis Reinking regardless.

B.  Defendant's Breach of His Duties of Care

The Defendant's multi-faceted legal duties not to transfer Travis Reinking firearms

---

[35] Doc. 27-2, p. 13, Interrogatory Answer #30 ("I knew Travis Reinking was a non-resident of the State of Illinois as that was the basis for his Firearm Owners Identification card had been [sic] revoked."); Doc. 27-3, p. 3, Interrogatory Answer #7 ("Jeffrey Reinking was aware that Travis Reinking was not a resident of the State of Illinois at the time he demanded return and thereafter took possession of the firearms owned by Travis Reinking."); Doc. 31-1, p. 3, Interrogatory Answer #7 ("In October/November 2017, I had reason to believe that Travis Reinking either did not reside in Illinois or intended to leave the Illinois [sic] without any intent to return.").

[36] Doc. 31-1, p. 6, Interrogatory Answer #14 ("Tazewell County Sheriff's Office served Travis Reinking with the Illinois FOID revocation letter at my shop at J&J Cranes."); Doc. 36-1, p. 24.

-10-

notwithstanding, in November 2017, the Defendant admits that he removed the firearms that had been revoked from Travis Reinking from his gun safe and then gave those firearms—including the Bushmaster XM-15 rifle that caused the Plaintiff's injuries—to Travis Reinking.[37] The Defendant also did so after seeking out, receiving, and then disregarding specific advice from an FBI agent to sell Travis Reinking's firearms rather than transfer them back to his son.[38] As a result of the Defendant's breach of his duties of care, Travis Reinking was able to take possession of the Bushmaster XM-15 rifle, which he then used to shoot at the Plaintiff and to murder the Plaintiff's brother in front of him.[39]

## V. Conclusion

For the foregoing reasons, there is no genuine dispute that the Defendant returned the firearm that produced the Plaintiff's injuries to Travis Reinking:

(1) After gratuitously undertaking a duty to keep firearms away from Travis Reinking;

(2) Despite a special relationship with Travis Reinking and actual knowledge that his son was delusional, dangerous, and had severe mental health problems; and

(3) In knowing violation of 18 U.S.C. § 922(a)(5) and within the State of Illinois after Travis Reinking's right to possess firearms in Illinois had been revoked.

Thus, this Court should find, as a matter of law, that the Defendant breached his legal duty not to transfer Travis Reinking firearms, and the Plaintiff's Motion for Partial

---

[37] Doc. 27-1, p. 90, lines 18-24; Doc. 27-1, p. 89, lines 9-12; Doc. 31-1, p. 4, Interrogatory Answer #9.

[38] Doc. 31-1, p. 5, Interrogatory Answer #11; *id.* at p. 6, Interrogatory Answer #12.

[39] Doc. 27-1, p. 90, lines 18-24; Doc. 38-1 (Davidson County Circuit Court's Nov. 8, 2018 Order Granting Plaintiff's Motion for Partial Summary Judgment as to Travis Reinking's Liability for Battery, Case No. 18C1777); Doc. 38-2 (Affidavit of Abede DaSilva).

-11-

Summary Judgment (Doc. 37) should be **GRANTED**. A jury trial to determine whether the Defendant's breach of his duties of care caused the Plaintiff's injuries and the amount of damages, if any, that the Defendant owes the Plaintiff should be scheduled accordingly.

Respectfully submitted,

By: /s/Daniel A. Horwitz_____
Daniel A. Horwitz, BPR #032176
1803 Broadway, Suite #531
Nashville, TN 37203
daniel.a.horwitz@gmail.com
(615) 739-2888

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of January, 2019, a copy of the foregoing was sent via CM/ECF to the following parties:

Parks T. Chastain
Cory R. Miller
BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC
545 Mainstream Drive, Suite 101
Nashville, TN 37228
pchastain@bkblaw.com
cmiller@bkblaw.com

Joel E. Brown
416 Main Street, Suite 1300
Peoria, IL 61602
jb@joelebrown.com

*Attorneys for Defendant Jeffrey L. Reinking*

By: /s Daniel A. Horwitz_____